UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


LANCE MCNEAL,

        Plaintiff,

v.                                        Case No. 2:11-cv-78
                                            HON. GORDON J. QUIST
GARY KOTT, et al.,

        Defendants.

_____/


## REPORT AND RECOMMENDATION

Prisoner Lance McNeal filed this *pro se* civil rights action pursuant to 42 U.S.C. §

1983 against Defendants MDOC employees Gary Kott, Dave LaLonde, Jerry Harwood, Jeff Woods,

Richard Piazza and Patricia Caruso. This matter is set for trial on January 13, 2014. Plaintiff's

complaint alleges that his rights were violated while he was confined at the Kinross Correctional

Facility. Plaintiff complains that Defendants violated his substantive due process rights and his

Eighth Amendment rights. Plaintiff also alleges that Defendants retaliated against him for filing

grievances and violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).

Plaintiff is suing Defendants in both their individual and official capacities and seeks compensatory

and punitive damages.

Plaintiff suffers from an enlarged prostate, benign prostatic hyperplasia (BPH), that

causes him to urinate more frequently. On March 23, 2009, during hour count, which occurs five

time per day, Plaintiff asked multiple times to use the bathroom. Defendant Kott denied the requests

and Plaintiff was forced to use the restroom without permission. Defendant Kott issued Plaintiff

three misconduct tickets and told Plaintiff that there was no emergency. As a result, Plaintiff was confined in his cell for 14 days with loss of privileges. Plaintiff complains that inmates believe that the officers use the count time as a coffee break and Defendant Kott has been observed sleeping during count time.

Plaintiff was told that he needed to obtain a detail for his medical needs from health care staff. However, Defendant Dr. Piazza told Plaintiff that he could not give him a medical detail because restroom issues are custody determinations and Defendant Warden Woods would not allow him to write such a detail. On March 27, 2009, this was confirmed by Nurse Williams who wrote: "health care is unable to write details for bathroom purposes, this is a custody issue."

On April 2, 2009, Plaintiff requested to use the bathroom during count. Defendant Kott denied Plaintiff's request and Plaintiff was forced to urinate on himself. Plaintiff complained to Defendant LaLonde about Defendant Kott's refusal to allow Plaintiff to use the bathroom. Defendant LaLonde stated that he supported Defendant Kott's refusals to allow Plaintiff to use the bathroom and then he smiled at Plaintiff. Plaintiff filed a grievance on Defendant Kott's refusal to grant permission to use the bathroom.

On April 14, 2009, Plaintiff received a medical detail from health care giving Plaintiff additional access to the restroom. Plaintiff gave Defendant Kott a copy of the medical detail and Defendant Kott just laughed and said it meant nothing because he still had to give Plaintiff permission. On April 18, 2009, Defendant Kott denied Plaintiff's request to use the restroom, forcing Plaintiff to urinate in a bottle in the presence of his three roommates. Plaintiff contends that other inmates were able to use the restroom at this time. Plaintiff complains that Defendants

LaLonde and Woods upheld the denial of his grievance, indicating that officers have the right to give or refuse permission to allow an inmate to use the restroom during count time.

Plaintiff asserts that on May 28, 2009, Defendant Kott moved Plaintiff to F-Unit and told Plaintiff that "inmates entering F-unit are known for having a lot of their property taken by Officer Fountain." Plaintiff complains that this was a retaliatory transfer to a less desirable unit and resulted in loss of property, reduced living area, less storage space and a more stressful living environment. Plaintiff grieved his move. Defendant LaLonde responded to the grievance stating that he made the move to help Plaintiff. Plaintiff was transferred to the Ryan Correctional Facility on December 22, 2010. At this new facility, Plaintiff was provided written permission to use the restroom during count.

On March 27, 2012, the court dismissed Plaintiff's retaliation claims against Defendants Wood and Kott and Plaintiff's official capacity claims. On September 11, 2012, the court dismissed Plaintiff's individual capacity ADA and RA claims. On January 22, 2013, Defendant Piazza was dismissed from this case. Plaintiff's Eighth Amendment, official capacity ADA, and official capacity RA claims remain against Defendants Woods, Kott and LaLonde. Plaintiff's retaliation claim remains against Defendant LaLonde.

Presently before the Court are Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Defendants argue that they are entitled to summary judgment on the remaining claims. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of

evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that they are entitled to qualified immunity on Plaintiff's Eighth Amendment claims asserting that no clearly established law exists under the facts of this case to justify this matter going to trial. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

> The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

> In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Report and Recommendation, docket #29, at 8.

Defendants argue that Plaintiff's rights were not violated when he was denied permission to use the restroom for 30 to 40 minutes at a time. Moreover, Defendants argue that Plaintiff was offered and refused to use continuance pads. Defendants argue that if Plaintiff truly could not hold his urine for a 45 minute time period then he should have accepted the continuance pads. Plaintiff argues that the facts are sufficient to create a genuine issue of material fact. Plaintiff points out that even after he had a medical detail for more frequent restroom use, if approved by a guard, Defendant Kott refused to allow Plaintiff to use the restroom. Plaintiff argues that this medical detail put Defendant Kott on notice of Plaintiff's medical need and Defendant Kott was deliberately indifferent to that need by denying Plaintiff restroom privileges. Plaintiff asserts that he was refused restroom privileges even after the count was taken by Defendant Kott. Plaintiff has not asserted that the refusal was an isolated occurrence, but the refusals were repeated and deliberate even after he obtained a medical kite. This court has already concluded that "repeated refusals that were not temporary" are sufficient to create a factual issue on whether Plaintiff's Eighth Amendment rights were violated. Order, Docket #43 at 3.

Defendants concede that denial of restroom privileges may violate the Eighth Amendment, citing *Hope v. Pezer*, 536 U.S. 730, 738 (2002), but argue that under the facts of this

case there is no clearly established law that could avoid the application of qualified immunity. As support, Defendants cite *Simpson v. Overton*, 79 Fed. Appx. 117 (6th Cir. 2003), a case that is factually similar, but not procedurally similar. In *Simpson*, the inmate plaintiff claimed that his medical condition required him to use the restroom frequently and that he was denied restroom use during count. The plaintiff sued the prison's medical director, regional health director and the MDOC director. The Sixth Circuit upheld the District Court's dismissal of the case which concluded that each of the defendants could not have been deliberately indifferent to plaintiff's medical needs. Specifically, the court found that one defendant did not have the authority to change the Warden's policy and the other two defendants were not personally involved for liability to attach. The opinion in *Simpson*, simply does not support Defendants' argument and really has no application to this case. As Plaintiff points out, the defendants in *Simpson* were simply the wrong defendants to sue in that case. Absent in *Simpson* is the necessary Eighth Amendment analysis that could be useful in this case.

Contrary to Defendants' argument, Plaintiff has alleged and shown facts that, if true, could establish a violation of clearly established Eighth Amendment law. Accordingly, it is recommended that the court deny Defendants' motion on Plaintiff's Eighth Amendment claims.

Defendants Woods and LaLonde assert that they should be dismissed for lack of personal involvement. Defendant Woods claims that he presided over the Warden's Forum and never restricted Health Services from issuing a medical detail for restroom use. Further, Defendant Woods claims that he referred each of Plaintiff's requests to the Deputy Warden and was told that the matter was resolved on each occasion. Defendant LaLonde asserts that he discussed the issue

with both Defendant Kott and Plaintiff and that he did not have authority to change prison policy.

This court has already rejected these arguments explaining:

> Regarding Defendant LaLonde, the magistrate judge found that Plaintiff's evidence regarding Defendant LaLonde's statement that he supported and authorized Defendant Kott's refusal to allow Plaintiff to use the bathroom during count was sufficient to show that Defendant LaLonde authorized Defendant Kott's allegedly unconstitutional actions. Although, Defendant LaLonde argues that he was not personally involved in denying Plaintiff bathroom privileges and that he only interviewed Plaintiff concerning a kite that Plaintiff submitted, the Court agrees with the magistrate judge that Plaintiff's evidence is sufficient to show that Defendant LaLonde authorized the unconstitutional conduct.

> Regarding Defendant Woods, the magistrate judge concluded that Plaintiff's allegation that Defendant Woods precluded medical staff from providing Plaintiff a medical detail due to Plaintiff's alleged prostrate suffices to render Defendant Woods liable for the alleged violation. Plaintiff's evidence shows that the medical staff refrained from providing him a medical detail because Defendant Woods told them that use of bathrooms during count time was a custody issue. While Defendant Woods did not directly participate in the denial of bathroom privileges to Plaintiff, he did so indirectly through his alleged refusal to allow medical staff to provide Plaintiff a medical detail. The Court concurs with the magistrate judge that Plaintiff's evidence suffices to show that Defendant Woods may be directly liable for violating Plaintiff's Eighth Amendment rights.

Order, Docket #43, at 2-3. Defendants have set forth no reasons for the court to ignore this previous decision and Defendants have not explained to the court why this decision should be set aside at this time. Defendants have simply ignored this previous ruling and reasserted the argument that was previously unsuccessful. For the same reasons previously asserted by this court, Defendants' motion should be denied on this issue. In the opinion of the undersigned, these disputed factual issues preclude the qualified immunity argument.

Similarly, Defendants reassert the same failed retaliation argument. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants argue that Plaintiff did not suffer adverse action when he transferred to a different unit. The court previously explained:

> Regarding adverse action, Plaintiff has shown that even though F-unit is one of seven level II housing units at KCF, it is considered less-desirable for a number of reason. Plaintiff contends that instead of having four man rooms, as was the case in E-Unit, where Plaintiff was housed, F-Unit is a 50-man "cube". Has less living and storage space, and prisoner in F-Unit were subjected to higher rates of property confiscation than other prisoners in other units. (Conner Decl. ¶¶ 5-6.) Plaintiff also states that F- Unit is the furthest unit from the cafeteria, and because of this distance, he suffered an asthma attack after being moved to F-Unit and had to be moved back to [a] four-man room closer to the cafeteria. The Court concludes that, given Plaintiff's evidence, the transfer to F-Unit-a less-desirable housing unit-was more than a *de minimis* retaliatory act. *See Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir 1989) (reversing a grant of summary judgment and concluding that Plaintiff sufficiently alleged a retaliation claims where he was transferred from a light labor job to a job that subjected him to extreme hardship and health risks); *Chavis v. Struebel*, 317 F. Supp.2d 232, 238 (W.D.N.Y. 2004) ("transferring an inmate to another housing unit or a psychiatric facility or assigning

the inmate a less desirable work assignment satisfies the adverse action requirement").

Order, Docket #43 at 4-5.

Defendants argue that they are entitled to qualified immunity because no court has found adverse action on these specific facts previously. Defendants must do more than simply allege that qualified immunity is applicable because no court has found liability on these same specific facts. What is clear is that a prison inmate may proceed on a retaliation claim where he asserts and provides support for the three factors set forth in *Thaddeus-X*. It is not the specific factual scenario that is important, but rather that the adverse action taken by a defendant was causally related to the inmate's protected conduct. In the opinion of the undersigned, Plaintiff has satisfied this standard.

Defendants argue that Plaintiff's ADA and RA claims should be dismissed. Plaintiff has alleged a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794(a). Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as, with respect to an individual: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).

Defendants argue that Plaintiff's claim of a frequent need to urinate due to an enlarged prostrate does not impair a major life activity which could require protection under the ADA. Plaintiff asserts that his condition falls under the definition of disability in the Act and

qualifies as an impairment of a major life activity. For purposes of defining a "disability," the ADA provides:

> (2) Major life activities
>
> (A) In general
>
> For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
>
> (B) Major bodily functions
>
> For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.
>
> (3) Regarded as having such an impairment
>
> For purposes of paragraph (1)(C):
>
> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.
>
> (4) Rules of construction regarding the definition of disability
>
> The definition of "disability" in paragraph (1) shall be construed in accordance with the following:
>
> (A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

(B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

(C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

(D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

42 U.S.C.A. § 12102.

Plaintiff has presented evidence that he suffers with BPH, or an enlarged prostrate. Plaintiff's ailment meets the definition of disability within the Act.

Defendants argue that Plaintiff was not denied a service or any programming as a result of his asserted disability. Defendants argue that Plaintiff simply asked for extra access that was not available to any other prisoner, and his request was denied. Further, Defendants assert that Plaintiff had the opportunity to request incontinence pads and a urinal as an accommodation. Plaintiff points out, that in addition to denial of restroom use, that he was given misconduct tickets for using the restroom when he could not obtain permission during count. As a result, Plaintiff has asserted that he was punished with 14 days of sanctions, and confined to his cell. Plaintiff was excluded from participation in programs and activities, including going to chow, yard and his prison job. Plaintiff further asserts that the only time he was informed about incontinence pads was in response to his kite and he took that as a sarcastic comment. Further, Plaintiff was only allowed to have a urinal in his cell while he served sanctions, because he was not allowed to leave his cell. Plaintiff argues that a urinal would not be permitted at any other time inside his cell. In the opinion of the undersigned, Plaintiff has established sufficient facts to overcome Defendants' motions for summary judgment on the ADA and RA claims.

Accordingly, it is recommended that Defendants' Motions for Summary Judgment (Docket #109 and #125) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   December 12, 2013